1  Carolyn Hunt Cottrell (SBN 166977)
   Nicole N. Coon (SBN 286283)
2  Keenan L. Klein (SBN 288011)
   SCHNEIDER WALLACE COTTRELL
3  KONECKY WOTKYNS LLP
   2000 Powell Street, Suite 1400
4  Emeryville, California 94608
   Telephone:   (415) 421-7100
5  Facsimile:   (415) 421-7105
   Email: ccottrell@schneiderwallace.com
6        ncoon@schneiderwallace.com
         kklein@schneiderwallace.com
7
   Robert S. Boulter (SBN 153549)
8  LAW OFFICES OF ROBERT S. BOULTER
   1101 Fifth Avenue, Suite 235
9  San Rafael, California 94901
   Telephone: (415) 233-7100
10 Facsimile:  (415) 233-7101
   Email: rsb@boulter-law.com
11
   Attorneys for Plaintiff and the Putative Classes and
12 Collective

13

14

## UNITED STATES DISTRICT COURT

15

## NORTHERN DISTRICT OF CALIFORNIA

16

| | | |
|---|---|---|
| THOMAS HUDDLESTON, individually and on behalf of all others similarly situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | CLASS AND COLLECTIVE ACTION COMPLAINT |
| JOHN CHRISTNER TRUCKING, LLC, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) ) ) ) ) ) | |

# **INTRODUCTION**

1.      This is a class and collective action lawsuit against John Christner Trucking, LLC ("JCT") to challenge, among other things, its policy and practice of unlawfully misclassifying its non-exempt hourly Driver employees ("Drivers") as independent contractors who are exempt from the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and California wage and hour laws.  As a result of its unlawful misclassification policy and practice, JCT has (1) failed to provide meal and rest periods and pay premiums for missed breaks pursuant to California Labor Code §§ 226.7 and 512; (2) failed to compensate for all hours worked pursuant to California Labor Code § 204 and the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et. seq.* ("FLSA"); (3) unlawfully deducted expenses from Drivers' wages in violation of California Labor Code § 2802; (4) failed to pay for waiting time penalties pursuant to California Labor Code §§ 201-203; (5) failed to provide timely and itemized wage statements pursuant to California Labor Code § 226; (6) engaged in unfair business practices pursuant to California Business and Professions Code §§ 17200, *et seq.*; and (7) violated the Oklahoma Business Opportunity Sales Act, 71 Okla. Stat. §§ 801, *et seq.*  Plaintiff requests civil penalties pursuant to Cal. Labor Code § 2699(a) and (f) for violating the various California Labor Code provisions enumerated above.

2.      Plaintiff Thomas Huddleston (hereinafter "Plaintiff") and the members of the proposed Classes and Collective are current and former Drivers employed by JCT.  Drivers for JCT are responsible for safely operating a commercial vehicle and transporting customer cargo to their destination in a timely manner.

3.      Despite classifying Drivers as "independent contractors," JCT treats Plaintiff and Drivers as employees.  JCT effectively bars Drivers from engaging in business with anyone other than JCT, thereby making them financially dependent on JCT.  Additionally, JCT exercises significant control over, among other things, the way that Drivers performed their job duties, the tools and equipment Drivers are required to use to perform their job duties, Drivers' rate of pay, and Drivers' ability to work for any other businesses.  JCT fixes the compensation paid to

**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND**
*Thomas Huddleston, et al. v. John Christner Trucking, LLC*

Drivers. Finally, Drivers perform duties consistent with JCT's central business. Drivers make deliveries on behalf of JCT and many Drivers work full-time for JCT for many years.

4. Plaintiff and putative Class and Collective members regularly work between eight and fourteen hours per day and sometimes more. Despite their long shifts, Plaintiff and putative Class and Collective members are routinely unable to take compliant meal and rest periods.

5. In addition, JCT fails to maintain proper records showing all hours worked by Plaintiff and putative Class and Collective members.

6. Plaintiff and putative Class and Collective members must also pay work expenses out of pocket, without reimbursement. For example, Plaintiff and putative Class and Collective members are not reimbursed for truck lease payments, gasoline and other expenses incurred when driving for JCT.

7. Plaintiff and putative Class and Collective members do not receive accurate, itemized wage statements reflecting the hours they work and the amount of wages they are entitled and for which they should be compensated. Nor are Plaintiff and putative Class and Collective members paid all amounts owed following voluntary or involuntary termination of employment.

8. Because of these violations, Plaintiff seeks compensation, damages, penalties, and interest to the full extent permitted by the FLSA, California Labor Code, and Industrial Welfare Commission ("IWC") Wage Order 9-2001.

9. JCT is also liable for various other penalties under the Labor Code, and for violation the Unfair Competition Law, California Business and Professions Code §§17200, *et seq.* ("UCL").

10. Plaintiff seeks full compensation on behalf of himself and all others similarly situated for all unpaid wages, all denied meal and rest periods, all unreimbursed necessary business expenses, inaccurate wage statement penalties, waiting time penalties, and penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA").

11.    Plaintiff also seeks relief for JCT's misrepresentations and omissions of material fact regarding the income Drivers would earn, the miles they would drive, and the nature of the economic opportunity JCT was offering to them.  Such claims are made under applicable Oklahoma statutes and common law.

12.    Plaintiff also seeks declaratory, equitable, and injunctive relief, including restitution and disgorgement of profits.

13.    Finally, Plaintiff seeks reasonable attorneys' fees and costs under the FLSA, the California Labor Code, and California Code of Civil Procedure § 1021.5.

## JURISDICTION AND VENUE

14.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

16.    Assignment to the San Francisco Division is appropriate because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the City and County of San Francisco.

## PARTIES

17.    Plaintiff is a resident of the State of California.  Plaintiff was employed as a Driver for JCT until approximately August 8, 2016. At all relevant times, JCT misclassified Plaintiff as an independent contractor when he was in fact a non-exempt employee. Plaintiff would regularly engage in JCT's business in the San Francisco Bay Area, including in San Francisco and Oakland.

18.    Plaintiff is informed, believes, and thereon alleges that Defendant John Christner Trucking, LLC is an Oklahoma corporation with its principal place of business in Sapulpa,

Oklahoma. During the relevant time period, JCT was, and still is, regularly engaged in business throughout the United States, including in the State of California. JCT's primary business consists of providing transportation services to various wholesale and retail clients. Plaintiff is further informed, believes, and thereon alleges that JCT employs Drivers throughout Northern California.

## FACTUAL ALLEGATIONS

19.     At all relevant times, JCT was Plaintiff's "employer" within the meaning of the FLSA and California law.

20.     Throughout the time period beginning four years prior to the filing of this lawsuit, through the present, JCT has employed numerous Drivers and contracted with numerous retail and wholesale clients around the country to provide transportation services.

21.     JCT requires prospective Drivers, including Plaintiff, to report to a location in Oklahoma before beginning their employment. While there, prospective Drivers, including Plaintiff, spend approximately four days completing orientation. During this time period, Drivers, including Plaintiff, are trained on running an "owner-operator" trucking business and on JCT's policies and procedures. Drivers, including Plaintiff, pay, or agree to pay, JCT and/or its affiliates for specified equipment, services, and other fees. Among these equipment fees, JCT requires Drivers, including Plaintiff, to enter into truck lease agreements with a leasing company, including Three Diamond Leasing, LLC. On information and belief, Three Diamond Leasing, LLC is a subsidiary of JCT. The costs paid by Drivers, including Plaintiff, are in excess of $500.00 within one year of the time Drivers, including Plaintiff, begin operating trucks on behalf of JCT.

22.     JCT requires prospective Drivers, including Plaintiff, to undergo a physical examination and to submit to drug and alcohol testing. Drivers must agree to continue to submit to drug and alcohol testing throughout their employment.

23. JCT requires its Drivers, including Plaintiff, to sign lengthy form contracts which mischaracterize each driver as an "independent contractor." The contracts are designed to conceal the fact that JCT and its Drivers are in an employer-employee relationship. JCT requires Drivers, including Plaintiff, to sign these contracts of adhesion without negotiation as a condition of employment.

24. Drivers, including Plaintiff, are instructed to choose a truck in JCT's lot that is available for lease, complete a full truck inspection using JCT's vehicle inspection form, and turn the inspection sheet into JCT's Shop Liaison for approval.

25. JCT also requires its Drivers, including Plaintiff, to lease equipment through a form provided by the leasing company, in Plaintiff's case: Three Diamond Leasing, LLC. For example, JCT requires its Drivers to lease a Qualcomm so that the Drivers receive work assignments from JCT and to communicate with JCT management while working. JCT deducts the costs of these materials from Drivers' compensation on a weekly basis. In the event a Driver damages or destroys any of JCT's equipment, the replacement and/or repair cost is deducted by JCT from the Driver's pay.

26. JCT deducts vehicle damage charges, vehicle lease charges, administrative charges and other equipment and materials charges from its Drivers', including Plaintiff's, pay.

27. In addition, JCT requires Drivers, including Plaintiff, to have insurance, including, *inter alia*, occupational accident insurance, physical damage insurance, Bob-tail insurance, commercial liability insurance, and a performance bond. JCT deducts the cost of insurance from Drivers' compensation.

28. Drivers, including Plaintiff, deliver goods on behalf of JCT to its clients.

29. Drivers, including Plaintiff, receive work assignments from JCT on the Qualcomm device or over the phone. Drivers who decline routes from JCT are punished by being sent to the bottom of the list of available Drivers, forcing them to wait longer before they are given another route.

**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND**
*Thomas Huddleston, et al. v. John Christner Trucking, LLC*

30.     Routes provided by JCT specify the point of origin, the destination, and the deadline for completion. JCT prohibits Drivers, including Plaintiff, from traveling on any roads other than main, four-lane highways. Drivers who do not comply are reprimanded by JCT and are denied assistance in the event of a mechanical failure.

31.     Drivers, including Plaintiff, for JCT regularly drive long hours in order to get deliveries done on time. Drivers regularly drive between eight and fourteen hours in one day and in excess of fifty hours per week as dictated by JCT.

32.     Drivers, including Plaintiff, are regularly denied timely meal breaks due to delivery deadlines imposed by JCT. Drivers are often unable to take a lunch break, or alternatively take a "working lunch." Lunch breaks often occur after five hours of work. Drivers, including Plaintiff, working longer than 10 hours regularly did not have an opportunity to take a second lunch break.

33.     Additionally, Drivers, including Plaintiff, are regularly unable to take timely rest breaks due to delivery deadlines imposed by JCT. Drivers are often unable to take a rest break in the first four hours of work. Drivers are also regularly unable to take a second rest break after six hours worked.

34.     Drivers, including Plaintiff, for JCT are paid by the mile. This rate is determined by JCT. This rate is non-negotiable. Drivers also receive "unloading pay," set by JCT.

35.     Wage statements provided by JCT do not include the aggregate number of hours worked by Drivers, including Plaintiff. Instead, wage statements list only the number of hours driven while on route multiplied by the mileage rate, minus deductions.

36.     JCT exercises significant behavioral and financial control over Drivers, including Plaintiff, establishing that they are in fact employees. Specifically, this control includes the following: Drivers are required to purchase JCT logos and place them on their "leased" vehicles; Drivers are required to lease a Qualcomm in order to accept JCT work assignments; Drivers are expected to complete deliveries in the time specified and determined by JCT; Drivers are required to check in with JCT supervisors using their Qualcomm at least two times per shift while on shift;

6

Drivers are not able to work for others; Drivers are required to comply with JCT's policies, procedures and practices or suffer penalties for non-compliance; Drivers are required to prepare and submit required documentation in accordance with JCT's policies and procedures; Drivers are required to purchase or lease equipment and vehicles from JCT; and Drivers are required to display JCT's signage on the vehicles.

37. JCT instructs Drivers, including Plaintiff, where to buy fuel while on route. JCT often directs Drivers to buy gasoline at specific gas stations, where the price is cheaper for JCT but not for the Driver. JCT strongly prefers to pay for the fuel and recoup the cost from Drivers, rather than letting the drivers buy their own fuel.

38. In addition, JCT issues its Drivers, including Plaintiff, a "DOT Log Compliance Handbook," which describes the U.S. Department of Transportation's requirements for tracking and logging daily work activity. JCT has the authority to terminate Drivers who do not properly log their time.

39. JCT has the authority to terminate Drivers, including Plaintiff, including for failing to abide by JCT's policies and practices.

40. JCT furnishes its Drivers, including Plaintiff, with work equipment without charge. This includes trailers, snow chains, a safety triangle, and a spare set of tires.

41. However, Drivers, including Plaintiff, were required to pay for much of the other equipment necessary to complete their work. Drivers are responsible for the cost of maintenance for the vehicles and are required to seek approval before making any repairs to the leased vehicles. In the event a Driver damages or destroys any of JCT's equipment, the replacement and/or repair cost is deducted by JCT from the Driver's weekly pay.

42. Drivers, including Plaintiff, are typically assigned deliveries from numerous JCT clients. JCT does not allow Drivers to exchange assignments amongst themselves or to subcontract the delivery to another person or entity without approval from JCT. By the terms of

the lease agreement, JCT also prohibits Drivers from using their leased vehicles for personal uses or for other transportation companies.

43. JCT misrepresents to Drivers, including Plaintiff, that they will be and are treated as independent contractors.

44. JCT does not provide Drivers, including Plaintiff, with disclosure documents pursuant to the Oklahoma Business Opportunity Sales Act.

45. On information and belief, JCT has not registered the business opportunity it sells to Drivers, including Plaintiff, in the State of Oklahoma.

46. JCT's unlawful conduct has been widespread, repeated, and consistent throughout its operations in California and the United States. JCT knew or should have known that its policies and practices have been unlawful and unfair.

47. JCT's conduct is willful, carried out in bad faith, and caused significant damages to its employees in an amount to be determined at trial.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

48. Plaintiff brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) as to claims for minimum wage violations, liquidated damages, and attorneys' fees and costs under the FLSA. The FLSA Collective that Plaintiff seeks to represent is defined as follows:

> All current and former Drivers who were employed by JCT to provide transportation services within the United States at any time during the period beginning three years prior to the filing of this Complaint, and continuing through the present.

49. Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA, because Plaintiff's FLSA claims are similar to the claims of the Collective members.

50. The Collective members are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that misclassifies them as exempt independent contractors, and thus requires them to perform work without compensation in violation of the FLSA.

51.     Plaintiff is representative of the Collective members and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

52.     Plaintiff will fairly and adequately represent and protect the interests of Collective members.  Plaintiff has retained counsel competent and experienced in employment class action and collective action litigation.

53.     The similarly situated Collective members are known to JCT, are readily identifiable, and may be located through JCT's records.  These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23

54.     First, Plaintiff seeks to maintain his California state law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  In particular, Plaintiff seeks to certify the following Rule 23 Sub-Class (the "First Sub-Class"):

> All current and former Drivers who were employed by JCT to provide transportation services in the State of California at any time during the period beginning four years prior to the filing of this action and continuing through the present.

55.     Second, Plaintiff seeks to maintain his Oklahoma state law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  In particular, Plaintiff seeks to certify the following Rule 23 Sub-Class (the "Second Sub-Class"):

> All current and former Drivers who entered into an agreement with JCT to provide transportation services in the State of Oklahoma, including, but not limited to, those who signed a lease agreement with Three Diamond Leasing, LLC, among others, at any time during the period beginning three years prior to the filing of this action and continuing through the present.

56.     The two Sub-Classes set forth above are referred to collectively as the "Class." Members of each Sub-Class are referred to as members of the "Class" or "Class members."

57. Plaintiff seeks to serve as a Class Representative for the above-defined Class.

58. Plaintiff's California and Oklahoma state law claims have been brought and may properly be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

59. Numerosity: The potential members of the Class are believed to exceed 100, and the Class Members are so numerous that joinder of all members is impracticable.

60. Commonality: There are questions of law and fact common to Plaintiff and the Class that predominate over any questions affecting only individual members of the Class. Examples of these common questions of law and fact include, without limitation:

    a. Whether JCT, through its policy and practice of unlawfully misclassifying Drivers as independent contractors who are exempt from California minimum wage protections, fails to pay members of the First Sub-Class the minimum wage they are owed in violation of California Labor Code § 1194;

    b. Whether JCT fails to maintain proper records for members of the First Sub-Class, including but not limited to all hours worked, in violation of the California Labor Code and Wage Orders;

    c. Whether JCT fails to compensate members of the First Sub-Class for all hours worked, in violation of the California Labor Code and Wage Orders;

    d. Whether JCT fails to authorize and permit, make available, and/or provide members of the First Sub-Class with the timely meal and rest periods to which they are entitled in violation of the California Labor Code and Wage Orders;

    e. Whether JCT fails to reimburse members of the First Sub-Class for reasonable and necessary business expenses in violation of California Labor Code § 2802;

    f. Whether JCT fails to timely pay members of the First Sub-Class for all wages owing upon termination of employment in violation of California Labor Code;

g. Whether JCT fails to provide members of the First Sub-Class with timely, accurate itemized wage statements in violation of California Labor Code and Wage Orders;

h. Whether JCT failed to register the business opportunity it sells to members of the Second Sub-Class in the State of Oklahoma;

i. Whether JCT provides the disclosure document required by Oklahoma law to members of the Second Sub-Class in connection with the sales of business opportunities in the State of Oklahoma;

j. Whether JCT violated the Oklahoma Business Opportunity Sales Act by misrepresenting that Drivers would be independent contractors, misrepresenting income Drivers would earn, misrepresenting miles Drivers would get, misrepresenting the average length of haul, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average miles JCT provided to Drivers;

k. Whether JCT violated the Oklahoma Deceptive Trade Practices Act by misrepresenting that Drivers would be independent contractors, misrepresenting income Drivers would earn, misrepresenting miles Drivers would get, misrepresenting the average length of haul, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average miles JCT provided to Drivers;

l. Whether JCT engaged in constructive fraud and negligent misrepresentation and had and breached a duty of disclosure by misrepresenting that Drivers would be independent contractors, misrepresenting income Drivers would earn, misrepresenting miles Drivers would get, misrepresenting the average length of haul, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average miles JCT provided to Drivers;

11

m.  Whether JCT fails to timely pay members of the First Sub-Class for all wages owing upon termination of employment in violation of California Business and Professions Code §§ 17200 *et seq.*;

n.  Whether JCT fails to reimburse members of the First Sub-Class for reasonable and necessary business expenses in violation of Business and Professions Code §§ 17200 *et seq.*;

o.  Whether JCT fails to provide members of the First Sub-Class with timely, accurate itemized wage statements in violation of Business and Professions Code §§ 17200 *et seq.*;

p.  Whether JCT fails to maintain proper records for members of the First Sub-Class, including but not limited to all hours worked, in violation of California Business and Professions Code §§ 17200 *et seq.*;

q.  Whether JCT's violations of the Oklahoma Business Opportunity Sales Act in turn result in violations of California Business and Professions Code §§ 17200 *et seq.* as to members of both sub-classes;

r.  Whether JCT is liable for penalties to members of the First Sub-Class under the PAGA; and

s.  The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the Class as alleged herein.

61.  **Typicality:**  Plaintiff's claims are typical of the claims of the Class.  JCT's common course of unlawful conduct as alleged herein has caused Plaintiff and Class members to sustain the same or similar injuries and damages.  Plaintiff's allegations – both legal and factual – are thereby representative of and co-extensive with the claims of the Class.

62.  **Adequacy:**  Plaintiff does not have any conflicts of interest with members of the Class he seeks to represent, and Plaintiff will prosecute this case vigorously on behalf of the proposed Class members.  Plaintiff's Counsel are competent and experienced in litigating wage

and hour and complex commercial class actions. Plaintiff will fairly and adequately represent and protect the interests of the Class he seeks to represent.

63. **Superiority of Class Action:** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery by reason of JCT's illegal policy and practice of misclassifying its Drivers as independent contractors, exempt from prevailing state wage and hour laws, and its other violations of law stated in this complaint. Class treatment will allow those similarly situated persons to litigate their claims in the manner most efficient and economical for the Parties and the judicial system.

64. Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

<div align="center">

**FIRST CAUSE OF ACTION**
**Failure to Pay Wages and Minimum Wage**
**Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.***
**(On Behalf of Collective)**

</div>

65. Plaintiff re-alleges and incorporates the above paragraphs as though fully set forth herein.

66. JCT violated the FLSA by knowingly failing to maintain records of all hours worked.

67. JCT violated the FLSA by knowingly failing to compensate Plaintiff and putative FLSA Collective members for all hours worked and by knowingly failing to pay Plaintiff and putative FLSA Collective members the federally mandated minimum wage in violation of 29 U.S.C. § 206 for all hours worked.

68. In addition, or in the alternative, JCT violated 29 U.S.C. § 206 by deducting costs for expenses, tools and equipment from Plaintiff and Class members' wages so as to cause their wages to at times fall below the federally mandated minimum wage rate.

69. JCT's actions were willful. Accordingly, JCT is liable under 29 U.S.C. § 216(b) to Plaintiff and Class members for liquidated damages in an amount equal to the wages JCT failed to pay as a result of the foregoing violation of 29 U.S.C. § 206.

70. Plaintiff and Class members are entitled to all of the unpaid wages, plus an additional equal amount as liquidated damages, court costs, attorneys' fees and expenses they expend in successfully bringing this action to recover their unpaid wages and any other relief deemed appropriate by the Court.

## SECOND CAUSE OF ACTION
### Failure to Pay Minimum Wage
### California Labor Code §§ 200, 1182.11, 1182.12, 1194, 1197, 1197.1, 1198
### (On Behalf of the First Sub-Class)

71. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

72. JCT intentionally and willfully pays Plaintiff and putative Class members below minimum wage by opting to pay Drivers at a rate determined per mile driven on route. After deducting costs for expenses, tools and equipment from Plaintiff and Class members' wages, Driver compensation is lowered substantially. After deductions, Drivers often make less than the state-mandated minimum wage for each hour they work.

73. Labor Code § 1194(a) provides as follows:
    Notwithstanding any agreement to work for a lesser wage, any
    employee receiving less than the legal minimum wage or the legal
    overtime compensation applicable to the employee is entitled to recover
    in a civil action the unpaid balance of the full amount of this minimum
    wage or overtime compensation, including interest thereon, reasonable
    attorneys' fees, and costs of suit.

74. Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

75. Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Order.

76. IWC Wage Order 9-2001(2)(H) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

77. In violation of California law, JCT knowingly and willfully refuses to pay employees the minimum wage. Therefore, JCT committed, and continue to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiff and the putative Class members' rights. Plaintiff and the putative Class are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

78. As a proximate result of the aforementioned violations, Plaintiff and the putative Class have been damaged in an amount according to proof at time of trial.

79. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### THIRD CAUSE OF ACTION
**Failure to Pay for All Hours Worked**
**California Labor Code §§ 201, 202, 204, and 221-223**
**(On Behalf of the First Sub-Class)**

80. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

81. Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

15

82. Labor Code §§ 201 and 202 require an employer to pay all wages earned but unpaid immediately upon the involuntary discharge of an employee or within seventy-two (72) hours of an employee's voluntary termination of employment.

83. Labor Code § 204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer as the regular paydays."

84. Labor Code §§ 221-223 prohibit employers from withholding and deducting wages, or otherwise artificially lowering the wage scale of an employee.

85. JCT has willfully maintained and continues to maintain a policy of denying Plaintiff and putative Class members any wages for activities they must perform before and after hauling products. At all relevant times, Plaintiff and putative Class members have been required by JCT to work off-the-clock without compensation for the work they perform. For example, while Drivers are compensated for driving time based on mileage and unloading time, Drivers are not compensated for all time spent refueling, completing paperwork, completing training, or performing other necessary tasks.

86. While JCT does not compensate Drivers for these work activities, JCT requires Drivers to perform them. This is time during which Drivers are subject to the control of JCT and is compensable time. JCT's failure to compensate Drivers for this time results in the denial of wages for all hours worked in violation of the Labor Code provisions cited herein.

87. JCT has committed these acts knowingly and willfully, with the wrongful and deliberate intention of withholding, deducting and reducing wages owed to Plaintiff and the Class for time spent on the aforementioned activities.

88. As a proximate result of these violations, JCT has damaged Plaintiff and the putative Class members in an amount to be determined according to proof at trial.

89. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND**
*Thomas Huddleston, et al. v. John Christner Trucking, LLC*

**FOURTH CAUSE OF ACTION**
**Failure to Authorize and Permit and/or Make Available Meal and Rest Periods**
**California Labor Code §§ 203, 223, 226.7, 512, and 1198**
**(On Behalf of the First Sub-Class)**

90.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

91.     JCT routinely denies timely meal periods to Plaintiff and putative Class members. Despite long work days regularly lasting well in excess of eight hours, deadlines imposed by JCT prevent Plaintiff and putative Class members from taking a meal period.  When Drivers do get a meal period, they are often untimely.  In addition, when Plaintiff and putative Class members work more than ten hours in a day, JCT regularly does not make a second meal period available to them.

92.     Plaintiff and putative Class members are not paid one hour of premium pay for the missed meal periods.

93.     Similar to meal periods, JCT routinely fails to make rest periods available to Plaintiff and putative Class members.  Plaintiff's and putative Class members' schedules do not allow them to take rest periods throughout the day.  When available, rest periods are often too short.  Plaintiff and putative Class members do not receive premium pay for their missed rest periods as required by California law.

94.     Labor Code §§ 226.7 and 512 and IWC Wage Orders 9-2001(11) and 9-2001(12) require JCT to authorize and permit meal and rest periods to its employees.  Labor Code §§ 226.7 and 512 and the applicable Wage Order prohibits employers from employing an employee for more than five hours without a meal period of not less than thirty minutes, and from employing an employee more than ten hours per day without providing the employee with a second meal period of not less than thirty minutes.  Labor Code § 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten minutes of net rest time per four hours or major fraction thereof of work, and to pay employees their full wages during those rest periods.  Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute

17

rest period, the employee is considered "on duty" and the meal or rest period is counted as time worked under the applicable wage orders.

95. Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized and permitted. Similarly, an employer must pay an employee denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized and permitted and/or not made available.

96. Despite these requirements, JCT has knowingly and willfully refused to perform its obligation to authorize and permit and/or make available to Plaintiff and the Class the ability to take the off-duty meal and rest periods to which they are entitled. JCT has also failed to pay Plaintiff and the Class one hour of pay for each off-duty meal and/or rest periods that they are denied. JCT's conduct described herein violates Labor Code §§ 226.7 and 512. Therefore, pursuant to Labor Code § 226.7(b), Plaintiff and the putative Class are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

97. As a proximate result of the aforementioned violations, Plaintiff and the putative Class have been damaged in an amount according to proof at time of trial.

98. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### FIFTH CAUSE OF ACTION
**Failure to Reimburse for Necessary Business Expenditures**
**California Labor Code § 2802**
**(On Behalf of the First Sub-Class)**

99. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

100.    JCT does not reimburse Plaintiff and putative Class members for necessary business expenditures.

101.    Labor Code § 2802 provides, in relevant part:
> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

102.    JCT regularly requires Plaintiff and putative Class members to pay out of pocket for gasoline and vehicle maintenance.  Furthermore, JCT regularly requires Plaintiff and putative Class members to pay out of pocket for occupational accident insurance, physical damage insurance, Bob-tail insurance, commercial liability insurance, and a performance bond.  In addition, JCT requires Plaintiff and putative Class members to lease specified equipment, such as a Qualcomm.  JCT does not reimburse Plaintiff and the putative Class members for these expenditures.

103.    JCT is liable to Plaintiff and putative Class members for the unreimbursed expenses and civil penalties, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

104.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## SIXTH CAUSE OF ACTION
### Failure to Maintain Proper Payroll Records
### California Labor Code § 1174
### (On Behalf of the First Sub-Class)

105.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

106.    JCT does not maintain proper records Plaintiff and putative Class members, including of all hours worked in a pay period, as required by California law.

19

107. Labor Code § 1174(d) provides:

> Every person employing labor in this state shall:
>
> . . .
>
> (d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned.

108. The IWC Wage Orders also establishes this requirement. (*See* IWC Wage Order 9-2001(7).)

109. Labor Code § 1174.5 further provides:

> Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

110. Plaintiff seeks to recover damages under this section.

111. JCT does not maintain proper records for Plaintiff and putative Class members in accordance with Labor Code § 1174 and the IWC Wage Orders. The records do not indicate the number of hours worked by Drivers, among other issues.

112. JCT is liable to Plaintiff and the putative Class alleged herein for civil penalties.

113. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### SEVENTH CAUSE OF ACTION
**Failure to Provide Accurate Itemized Wage Statements**
**California Labor Code § 226**
**(On Behalf of the First Sub-Class)**

114. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

115. JCT does not provide Plaintiff and putative Class members with accurate itemized wage statements as required by California law. Wage statements provided by JCT do not indicate the total number of hours worked by Drivers in a pay period.

116. Labor Code § 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

117. The IWC Wage Orders also establishes this requirement. (*See* IWC Wage Order 9-2001(7).)

118. Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

119. JCT does not provide timely, accurate itemized wage statements to Plaintiff and putative Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders. The

wage statements JCT provides its employees, including Plaintiff and putative Class members, do not indicate how many hours Drivers work.

120.    JCT is liable to Plaintiff and the putative Class alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

121.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## EIGHTH CAUSE OF ACTION
### Coerced Purchases
### California Labor Code § 450
### (On Behalf of the First Sub-Class)

122.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

123.    California Labor Code § 450 prohibits an employer or agent, or other person, from compelling or coercing any applicant for employment or employee to purchase any thing of value, including any fee of any type to apply for employment, to receive or complete an application for employment, or for an employer to provide, accept or process an application for employment.

124.    JCT violated California Labor Code § 450 by compelling and/or coercing Plaintiff and the putative Class alleged herein to lease or purchase vehicles and other equipment directly from JCT or other companies.

125.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## NINTH CAUSE OF ACTION
### Willful Misclassification
### California Labor Code § 226.8
### (On Behalf of the First Sub-Class)

126.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

127.    JCT intentionally and willfully characterized Plaintiff and members of the class as independent contractors rather than employees in violation of California Labor Code § 226.8.

22

128. JCT has been engaging in a pattern and practice of misclassifying employees as independent contractors for its own financial benefit.

129. As a direct and proximate result of the unlawful acts and/or omissions of JCT, Plaintiff and the putative Class alleged herein are entitled to damages in an amount to be determined at trial, civil penalties of not less than ten thousand dollars ($10,000.00) and not more than twenty-five thousand dollars ($25,000.00) for each violation, any other penalties and fines provided by law, interest thereon, attorneys' fees, and costs of suit.

130. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## TENTH CAUSE OF ACTION
### Waiting Time Penalties
### California Labor Code §§ 201-203
### (On Behalf of the First Sub-Class)

131. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

132. JCT does not provide Plaintiff and putative Class members with their wages when due under California law after their employment with JCT ends.

133. Labor Code § 201 provides:
If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

134. Labor Code § 202 provides:
If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

135. Labor Code § 203 provides, in relevant part:
If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

23

136.   Plaintiff and some of the putative Class members left their employment with JCT during the statutory period, at which time JCT owed them unpaid wages.  These earned, but unpaid, wages derive from time spent working for the benefit of JCT, which went unrecorded and/or uncompensated.

137.   JCT willfully refused and continues to refuse to pay Plaintiff and putative Class members all the wages that were due and owing to them after termination, including premium pay for missed meal and rest breaks.  As a result of JCT's actions, Plaintiff and putative Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest

138.   JCT's willful failure to pay Plaintiff and putative Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202.  As a result, JCT is liable to Plaintiff and proposed Class members for all penalties owing pursuant to Labor Code §§ 201-203.

139.   In addition, § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due.  Therefore, the Plaintiff and putative Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

140.   Wherefore, Plaintiff and the Class request relief as hereinafter provided.

### ELEVENTH CAUSE OF ACTION
**Unlawful Business Practices**
**California Business and Professions Code §§ 17200, *et seq.***
**(On Behalf of the First Sub-Class)**

141.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

142.   The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

143.   Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

144.   Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under

substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

145.    Beginning at an exact date unknown to Plaintiff, but at least since the date four years prior to the filing of this suit, JCT has committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

      a.   violations of the FLSA pertaining to the payment of wages;

      b.   violations of Labor Code § 1194 and IWC Wage Order 9-2001 pertaining to payment of wages;

      c.   violations of Labor Code §§ 226.7 and 512 and Wage Order 9-2001 pertaining to meal and rest breaks;

      d.   violations of Labor Code § 2802 regarding indemnification for necessary expenditures;

      e.   violations of Labor Code § 226 regarding accurate, timely itemized wage statements;

      f.   violations of Labor Code § 450 regarding coerced purchases;

      g.   violations of Labor Code § 226.8 regarding willful misclassification; and

      h.   violations of Labor Code §§ 201-203.

146.    The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200 et seq.

147.    The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200, et seq.  Among other things, the acts and practices have taken from Plaintiff and the

Class wages rightfully earned by them, while enabling JCT to gain an unfair competitive advantage over law-abiding employers and competitors.

148. Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent JCT from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

149. As a direct and proximate result of the aforementioned acts and practices, Plaintiff and the Class members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

150. Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition. Plaintiff and the Class members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint. Plaintiff's success in this action will enforce important rights affecting the public interest and in that regard Plaintiff sues on behalf of himself as well as others similarly situated. Plaintiff and putative Class members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

151. Plaintiff herein takes upon himself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

152. Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## TWELFTH CAUSE OF ACTION
### Unlawful Sale of Business Opportunities
### 71 Okla. Stat. §§ 806, 808, 819, 824
### (On Behalf of the Second Sub-Class)

153.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

154.    The Oklahoma Business Opportunity Sales Act regulates the sale of a "business opportunity" in the State of Oklahoma.

155.    "Business opportunity" means a contract or agreement, between a seller and purchaser, express or implied, oral or in writing, wherein it is agreed that the seller shall provide the purchaser any products, equipment, supplies, or services enabling the purchaser to start a business and the seller represents directly or indirectly, orally or in writing, *inter alia*, that the seller or a person specified by the seller will provide or assist the purchaser in finding accounts for the purchaser's services; or that the seller will provide a marketing plan.

156.    "Marketing plan" means advice or training, provided to the purchaser by the seller or a person recommended by the seller, pertaining to the sale of any products, equipment, supplies or services and the advice or training includes, but is not limited to, preparing or providing, *inter alia*, training regarding the promotion, operation, or management of the business opportunity; or operational, managerial, technical or financial guidelines or assistance.

157.    71 Okla. Stat. § 806 provides:

It is unlawful for any person to offer or sell any business opportunity … in this state unless the business opportunity is registered under the provisions of the provisions of the Oklahoma Business Opportunity Sales Act or is exempt under Section 803 of this title.

158.    71 Okla. Stat. § 808(a) provides:

It shall be unlawful for any person to offer or sell any business opportunity required to be registered pursuant to the Oklahoma Business Opportunity Sales Act unless a written disclosure document is filed pursuant to Section 807 of this title is delivered to each purchaser at least ten (10) business days prior to the execution by a purchaser of any contract or agreement imposing a binding legal obligation on the purchaser or the payment by a purchaser of any consideration in connection with the offer or sale of the business opportunity.

159. Drivers, including Plaintiff, while physically present in Oklahoma purchased, equipment and services from JCT and/or its affiliates, including, but not limited to, Three Diamond Leasing, LLC (a person recommended by JCT) to enable them to start an "owner-operator" business (the "Driving Opportunity") providing services to JCT. When selling the Driving Opportunity JCT represented to the Drivers that it would assist Drivers, including Plaintiff, in finding purchasers for their services. JCT represented that it would provide training to Drivers, including Plaintiff, including training regarding the promotion, operation, or management of an owner-operator trucking business. JCT also represented that it would provide Drivers, including Plaintiff, operational, managerial, technical, or financial guidance or assistance.

160. JCT does not and did not provide Drivers, including Plaintiff, with the disclosure documents required by Oklahoma law. And, on information and belief, the Driving Opportunity sold by JCT is not registered as required by Oklahoma law.

161. Pursuant to 71 Okla. Stat. § 819, it is unlawful for any person "1. To employ any device, scheme or artifice to defraud; 2. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or 3. To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person." Further, pursuant to 71 Okla. Stat. § 822, it "is unlawful for any person, in connection with the offer or sale of any business opportunity in this state, to publish, circulate or use any advertising which contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

162. In selling the Driving Opportunity, JCT represented to Drivers, including Plaintiff, while they were physically present in Oklahoma at JCT's headquarters, that they would be independent contractors running their own business, not employees. This representation was material to Drivers, including Plaintiff. As noted above, JCT's representations that Drivers would

be independent contractors or independent business owners was false and/or misleading. JCT in fact treated Drivers, including Plaintiff, as employees.

163.   JCT also represented and advertised to Drivers, including Plaintiff, that if they purchased the Driving Opportunity they would earn positive amounts of money and drive certain amounts of miles. Examples of such representations and advertising are found in pages and proformas from JCT's website and are attached as Exhibit A hereto. Therein, JCT represents that:

a.   that Drivers would drive 2800 miles per week and earn a net income of approximately $1,100 per week;

b.   "JCTs Lease to Own Program (through Three Diamond Leasing, LLC) has been a huge success….. we offer one of the best compensation packages in the industry."

c.   "The best part about our Lease program is that at the end of the lease term, the truck is yours for a buck! Get started now and make your dreams of owning your own truck and being your own boss a reality."

d.   "JCT offers a driving career that is rewarding not only from an earnings perspective, but also because you will have the experience of being part of a team recognized as one of the best in the industry."

e.   "JCT DRIVER BENEFITS• Higher Pay Rate"

f.   "At John Christner, our standards are high, but if you are willing to put in the effort, you will have a career that is rewarding not only from an earnings perspective but also because you will have the experience of being part of a team that is recognized nationwide for being the best."

g.   "Though this program does take a lot of hard work and at times may not be easy, you will find that, in the end, the results are truly rewarding."

h.   "Our program is designed to allow you to begin building equity (ownership) simply by driving the truck! Your experience is your credit and your hard work

29

takes care of the rest. We operate a fleet of newer model high-content trucks and we offer one of the best compensation packages in the industry."

i. "Get started now on making your dreams of owning your own truck and being your own boss a reality with JCT's Lease-to-Own Program!"

j. "Lease Purchase Owner Operator Team Programs do not get any better than the program at John Christner Trucking! It's no secret that teams earn more money, so why not earn more money while driving for a company that has a well-known reputation for being a leader in the industry…. PROGRAM INCLUDES:• Mostly Drop and Hook • Lots of Straight Loads • Great Miles….The Lease Purchase Program at JCT is GREAT for teams! Our solo drivers are more successful and driving with a partner can make your goals even more attainable….Find out for yourself why our Operators are successful and are smiling when you see them on the road"

k. "TEAM UP WITH A LEADER IN THE INDUSTRY FOR TEAM DRIVERS AND START EARNING MORE MONEY TODAY!"

164.   JCT further advertises that it provides Drivers who purchased the Driving Opportunity with "one of the Nation's BEST Lease Purchase Programs!," "Consistent Freight," and "Average Length of Haul" of 1200 miles and urges Drivers to "Team up with a leader in the industry and Start Earning More Money Today!"  An example of such advertising is attached at Exhibit B.

165.   The representations in paragraphs 162-164 were false and/or misleading.

166.   JCT made the representations noted in paragraphs 162-164 in order to induce and mislead Drivers into purchasing the Driving Opportunity and sign an operating agreement with JCT and truck lease with leasing companies, including Three Diamond Leasing, LLC.

167.    JCT knew but concealed the material facts from Drivers, including Plaintiff, that the average solo lease drivers did not earn anything close to $1,100 per week or drive anything close to 2800 miles per week. JCT knew but concealed the material facts from Drivers, including Plaintiff, that 1) the turnover rates of in the Driving Opportunity was extremely high, 2) that most if not all Drivers that purchased the Driving Opportunity failed within a short period of time, 3) that the Driving Opportunity did not offer any prospect of any real sustained economic opportunity, 4) that JCT did not offer one of the best compensation packages in the industry, 5) that purchasing the Driving Opportunity did not offer a driving career or one that was rewarding from an earnings perspective or results that were truly rewarding.

168.    The Drivers, including Plaintiff. relied on JCT's affirmative representations and its omissions of material facts, when deciding to purchase the Driving Opportunity from JCT.

169.    For the foregoing reasons, JCT is in violation of 71 Okla. Stat. §§ 806, 808, 819, and 822 as to Plaintiff and the putative Class.

170.    In the conduct described above, JCT acted intentionally with malice and/or with reckless disregard toward the rights of Plaintiff and the putative Class entitling Plaintiff and the putative Class to an award of punitive damages under applicable law.

171.    Pursuant to 71 Okla. Stat. § 824, Plaintiff seeks recovery of all money and all other valuable consideration paid for the Driving Opportunity, actual damages, exemplary damages, interest, and reasonable attorneys' fees and costs on behalf of himself and the putative Class.

### THIRTEENTH CAUSE OF ACTION
**Deceptive and Unfair Trade Practices
Oklahoma Consumer Protection Act, 15 Okl. St. §§ 752, *et seq.*
(On Behalf of the Second Sub-Class)**

172.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

173.    The Oklahoma Consumer Protection Act (OCPA), 15 Okl. St. §§ 752, et seq. bars deceptive and unfair trade practices in connection with "the advertising, offering for sale or

31

purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented."

174. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral. "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

175. The representations, omissions, and conduct of JCT as described above in paragraphs 159-164 constitute deceptive and unfair trade practices.

176. In the conduct described above, JCT acted intentionally with malice and/or with reckless disregard toward the rights of Plaintiff and the putative Class entitling Plaintiff and the putative Class to an award of punitive damages under applicable law.

177. Pursuant to 15 Okla. Stat. § 761.1, Plaintiff seeks recovery of all money and all other valuable consideration paid for the Driving Opportunity, actual damages, exemplary damages, interest, injunctive relief, and reasonable attorneys' fees and costs on behalf of himself and the putative Class.

## FOURTEENTH CAUSE OF ACTION
### Deceptive Trade Practices
### Oklahoma Deceptive Trade Practices Act, 78 Okl. St. §§ 52, *et seq.*
### (On Behalf of the Second Sub-Class)

178. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

179. The Oklahoma Deceptive Trade Practices Act, 78 Okl. St. §§ 52, et seq. bars deceptive trade practices including "Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false

representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith."

180. The representations, omissions, and conduct of JCT as described above in paragraphs 159-164 constitutes deceptive trade practices.

181. In the conduct described above, JCT acted intentionally with malice and/or with reckless disregard toward the rights of Plaintiff and the putative Class entitling Plaintiff and the putative Class to an award of punitive damages under applicable law.

182. Pursuant to 78 Okla. Stat. § 54, Plaintiff seeks recovery of all money and all other valuable consideration paid for the Driving Opportunity, actual damages, exemplary damages, interest, injunctive relief, and reasonable attorneys' fees and costs on behalf of himself and the putative Class.

**FIFTEENTH CAUSE OF ACTION**
**Constructive Fraud and Negligent Misrepresentation**
**(On Behalf of the Second Sub-Class)**

183. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

184. In Oklahoma, the concealment of material facts which one is bound under the circumstances to disclose, constitutes constructive fraud. A duty to speak may arise from partial disclosure, the speaker being under a duty to say nothing or to tell the whole truth. One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth.

185. As noted above in paragraphs 159-164, JCT offered Plaintiff and the Class the Driving Opportunity from which they would be able to develop a career and earn positive income. Once JCT embarked on making such a business offer to the Plaintiff and putative Class, JCT owed them a duty of full disclosure. Plaintiff and the putative class relied on such offer, representations, and omissions in purchasing the Driving Opportunity. However, JCT did not

disclose the material facts of the high turnover of Drivers purchasing the Driving Opportunity and that most if not all Drivers failed to achieve such a career and positive income over any sustained period. Plaintiff and the putative class relied on such omissions in purchasing the Driving Opportunity. Had JCT provided the full truth, Plaintiff and the putative class would not have purchased the Driving Opportunity.

186. JCT also made representations about miles, earnings, and average lengths of haul Drivers could expect. Plaintiff and the putative class relied on such representations in purchasing the Driving Opportunity. However, JCT did not disclose the material facts that most if not all Drivers did not achieve such mileage, earnings, and average lengths of haul over any sustained period of time. Plaintiff and the putative class relied on such omissions in purchasing the Driving Opportunity. Had JCT provided the full truth, Plaintiff and the putative class would not have purchased the Driving Opportunity.

187. In Oklahoma, the concealment of material facts which one is duty bound under the circumstances to disclose, constitutes negligent misrepresentation. Under the circumstances here, where, in the course of its business, JCT offered Plaintiff and the Class the Driving Opportunity from which they would be able to develop a career and earn positive income, JCT was duty bound to disclose all material facts related to the Driving Opportunity and exercise reasonable care and competence. JCT breached its duty of disclosure and reasonable care and competence by failing to disclose the material facts of the high turnover of Drivers purchasing the Driving Opportunity, that most if not all Drivers failed to achieve such a career and positive income over any sustained period of time, that Drivers did not get enough miles on average to sustain earn income and/or their expense, and that Drivers did not get an average length of haul of 1200 miles. Plaintiff and the putative class relied on such omissions in purchasing the Driving Opportunity. Had JCT provided the full truth, Plaintiff and the putative class would not have purchased the Driving Opportunity.

**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND**
*Thomas Huddleston, et al. v. John Christner Trucking, LLC*

188.    Plaintiff and the putative Class suffered damages as a result of JCT's material misstatements and omissions in that they paid leases and made other payments for the Driving Opportunity and were defrauded out of their labor.

189.    In the conduct described above, JCT acted intentionally with malice and/or with reckless disregard toward the rights of Plaintiff and the putative Class entitling Plaintiff and the putative Class to an award of punitive damages under applicable law.

190.    Pursuant to 78 Okla. Stat. § 54, Plaintiff seeks recovery of all money and all other valuable consideration paid for the Driving Opportunity, actual damages, exemplary damages, interest, injunctive relief, and reasonable attorneys' fees and costs on behalf of himself and the putative Class.

<u>**SIXTEENTH CAUSE OF ACTION**</u>
<u>**UNJUST ENRICHMENT**</u>
**(On Behalf of the Second Sub-Class)**

191.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

192.    Because of JCT's wrongful and fraudulent conduct and its failure to disclose material facts as described above, Plaintiff and the Drivers have conferred benefits upon JCT.

193.    JCT was at all relevant times aware that the benefits conferred upon it by the Drivers were the result of its wrongful conduct.

194.    Allowing JCT to retain these unjust profits and other benefits would offend traditional notions of justice and fair play.  Under these circumstances, it would be inequitable and unjust for JCT to retain the benefits and allowing it to do so would induce companies to engage in fraudulent and/or other wrongful conduct to increase profits.

195.    JCT is in possession of funds and benefits that were wrongfully obtained from Drivers and such funds should be restored and/or disgorged as ill-gotten gains.

## SEVENTEENTH CAUSE OF ACTION
### Unlawful Business Practices
### California Business and Professions Code §§ 17200, *et seq.*
### (On Behalf of Members of both the First and Second Sub-Classes)

196.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

197.     The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

198.     Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

199.     Beginning at an exact date unknown to Plaintiff, but at least since the date four years prior to the filing of this suit, JCT has committed further acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and fraudulent business acts and practices described above, through its violations of the Oklahoma Business Opportunity Sales Act set forth above.

200.     The violations of these laws serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200 *et seq.*

201.     The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200, *et seq.*  Among other things, the acts and practices have taken from Plaintiff and the Class money and wages rightfully earned by them, while enabling JCT to gain an unfair competitive advantage over law-abiding employers and competitors.

202.     Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.  Injunctive relief is necessary and appropriate to prevent JCT from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

36

203.    As a direct and proximate result of the aforementioned acts and practices, Plaintiff and the Class members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

204.    Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition. Plaintiff and the Class members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint. Plaintiff's success in this action will enforce important rights affecting the public interest and in that regard Plaintiff sues on behalf of himself as well as others similarly situated. Plaintiff and putative Class members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

205.    Plaintiff herein takes upon himself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

206.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

**EIGHTEENTH CAUSE OF ACTION**
**Statutory Penalties Pursuant to PAGA**
**California Labor Code § 2699(a)**
**(On behalf of All Aggrieved Employees)**

207.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

208.    Labor Code § 2699(a) provides:
Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies or employees, for a violation of this code,

CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND
*Thomas Huddleston, et al. v. John Christner Trucking, LLC*

may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees.

209.   Labor Code § 203 provides, in relevant part:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days.

210.   Labor Code § 226(a) provides:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

211.   Labor Code § 558(a) provides:

Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was

38

underpaid in addition to an amount sufficient to recover underpaid wages.

(3)  Wages recovered pursuant to this section shall be paid to the affected employee.

212.    Labor Code § 1174.5 provides:

Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

213.    Plaintiff seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by JCT, as alleged above, to timely pay all wages owed to Plaintiff and each putative Class member in compliance with Labor Code §§ 201-202 in the amounts established by Labor Code § 203. Plaintiff seeks such penalties as an alternative to the penalties available under Labor Code § 203, as prayed for herein.

214.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by JCT, alleged above, to provide Plaintiff and each Class member an accurate, itemized wage statement in compliance with Labor Code § 226(a) in the amounts established by Labor Code § 226(e).  Plaintiff seeks such penalties as an alternative to the penalties available under Labor Code § 226(e), as prayed for herein.

215.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by JCT, alleged above, to provide Plaintiff and each Class member compliant meal and rest periods in compliance with Labor Code § 512.

216.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by JCT, alleged above, to maintain accurate records in compliance with Labor Code § 1174 with respect to Plaintiff and each Class member.

217.    Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff provided the Labor and Workforce Development Agency ("LWDA") with notice of his intention to file this claim. Sixty-five calendar days have passed without notice from the LWDA.  Plaintiff satisfied the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

39

218.     Plaintiff seeks the aforementioned penalties on behalf of the State, other aggrieved employees, and himself as set forth in Labor Code § 2699(g), (i).

219.     JCT is liable to Plaintiff, the Class, and the State of California for the civil penalties set forth in this Complaint, with interest thereon.  Plaintiff is also entitled to an award of attorneys' fees and costs as set forth below.

220.     Wherefore, Plaintiff and the Class request relief as hereinafter provided.

<u>**NINETEENTH  CAUSE OF ACTION**</u>
**Statutory Penalties Pursuant to PAGA**
**Labor Code § 2699(f)**
**(On behalf of All Aggrieved Employees)**

221.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

222.     Labor Code § 2699(f) provides:
> For all provisions of this code except those for which a civil penalty
> is specifically provided, there is established a civil penalty for a
> violation of these provisions, as follows: . . . (2) If, at the time
> of the alleged violation, the person employs one or more employees, the
> civil penalty is one hundred dollars ($100) for each aggrieved
> employee per pay period for the initial violation and two hundred dollars
> ($200) for each aggrieved employee per pay period for each subsequent violation.

223.     To the extent than any violation alleged herein does not carry penalties under Labor Code § 2699(a), Plaintiff seeks civil penalties pursuant to Labor Code § 2699(f) for Plaintiff and Class members each pay period in which he or she was aggrieved, in the amounts established by Labor Code § 2699(f).

224.     Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff has provided the LWDA with notice of his intention to file this claim.  Sixty-five calendar days have passed without notice from the LWDA.  Plaintiff satisfied the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

225.     Plaintiff seeks the aforementioned penalties on behalf of the State, other aggrieved employees, and themselves as set forth in Labor Code § 2699(g), (i).

40

226.   JCT is liable to Plaintiff, the proposed Class, and the State of California for the civil penalties set forth in this Complaint, with interest thereon.  Plaintiff is also entitled to an award of attorneys' fees and costs as set forth below.

227.   Wherefore, Plaintiff and the Class request relief as hereinafter provided.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a)   Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the California Labor Code;

b)   For a declaratory judgment that JCT has violated the California Labor Code and public policy as alleged herein;

c)   For a declaratory judgment that JCT has violated California Business and Professions Code §§ 17200 *et seq.*, as a result of the aforementioned violations of the California Labor Code and of California public policy protecting wages;

d)   For preliminary, permanent, and mandatory injunctive relief prohibiting JCT,  its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

e)   For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

f)   For an order awarding Plaintiff and the Class and Collective members compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money and other valuable consideration paid for the Driving Opportunity, actual damages, punitive damages, and all other sums of money owed to Plaintiff and Class members, together with interest on these amounts, according to proof;

g)   For an order awarding Plaintiff and the Class members civil penalties pursuant to the California Labor Code provisions cited herein, with interest thereon;

h) For an award of reasonable attorneys' fees as provided by the California Labor Code; California Code of Civil Procedure § 1021.5; the FLSA; the Oklahoma Business Opportunity Sales Act; and/or other applicable law;

i) For all costs of suit;

j) For interest on any damages and/or penalties awarded, as provided by applicable law; and

k) For such other and further relief as this Court deems just and proper.

Dated: April 13, 2017                                Respectfully submitted,


                                                     */s/ Carolyn Hunt Cottrell*
                                                     Carolyn Hunt Cottrell
                                                     Nicole N. Coon
                                                     Keenan L. Klein
                                                     SCHNEIDER WALLACE
                                                     COTTRELL KONECKY
                                                     WOTKYNS LLP
                                                     2000 Powell Street, Suite 1400
                                                     Emeryville, California 94608
                                                     Tel: (415) 421-7100
                                                     Fax: (415) 421-7105

                                                     Robert S. Boulter
                                                     LAW OFFICES OF ROBERT S. BOULTER
                                                     1101 Fifth Ave. Ste. 235
                                                     San Rafael, CA 94901
                                                     Telephone: (415) 233-7100
                                                     Facsimile: (415) 233-7101

                                                     Attorneys for Plaintiff and the Putative Classes and
                                                     Collective

**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND**
*Thomas Huddleston, et al. v. John Christner Trucking, LLC*

<center>**DEMAND FOR JURY TRIAL**</center>

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

Dated: April 13, 2017                        Respectfully submitted,

                                        */s/ Carolyn Hunt Cottrell*
                                        Carolyn Hunt Cottrell
                                        Nicole N. Coon
                                        Keenan L. Klein
                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY
                                        WOTKYNS LLP
                                        2000 Powell Street, Suite 1400
                                        Emeryville, California 94608
                                        Tel: (415) 421-7100
                                        Fax: (415) 421-7105

                                        Robert S. Boulter
                                        LAW OFFICES OF ROBERT S. BOULTER
                                        1101 Fifth Ave. Ste. 235
                                        San Rafael, CA 94901
                                        Telephone: (415) 233-7100
                                        Facsimile: (415) 233-7101

                                        Attorneys for Plaintiff and the Putative Classes and Collective

<center>43</center>

EXHIBIT A

 

## JCT Variable Lease

Below is a sample proforma to calculate an estimate of what your fixed expenses and variable expenses may be. The highest truck payment has been inserted to calculate the expenses. Truck payments do vary according to tractor and year. Fuel Surcharge is an example of what we paid our contractors on a recent week based on the DOE National average that same week as listed below.

📱 866-782-5443 (tel:86678254433)

**APPLY NOW(HTTPS://EBEAPPLY.COM(HTTPS://EBEAPPLY.COM(HTTPS://EBEAPPLY.COM/JCTVARIABLELEASE/INDEX**

| Truck Selector Tool |
| Select Truck Model |





## KENWORTH T680

### INDUSTRY LEADING EXCLUSIVE WARRANTY COVERAGE

- 50K oil filter change interval
- Base Vehicle coverage 4YR/500K (includes HVAC systems)
- Comprehensive 5YR/700K After-treatment (DPF & DEF systems)
- Comprehensive Engine Coverage 5YR/700K
- Tow Coverage 4YR/500K
- Glued in, curved windshield to reduce downtime for windshield replacement

### SAFETY

- Roll Stability Control
- Bendix Air Disc Brakes on steer axle, oversized rear Bendix air brake package
- Lane Departure Warning System
- High visibility seat belts with indicator lamp and buzzer
- Truck Lite LED Headlamps, cab lights, rear work lights, stop, tail, turn, backup lamps and backup alarm.
- Bluetooth Radio
- Dual 4 way Moto Mirrors
- 4S/4M ABS with Hill Start Aid, and automatic traction control
- Steering wheel controls

### MAXIMUM EFFECIENCY

- Wind tunnel tested over 2,500 hours and 16 months
- Optimized Aerodynamics
- Paccar MX-13 455 -1700 torque 1550/1750@1000 rpm
- Eaton Fuller Transmission FAOM15810C 10Speed Advantage Series
- 2.93 rear axle ratio with matching Dana DSP41 rear ends for maximum fuel economy
- 10w30 engine oil
- Eaton Roadranger synthetic lube in steer/rear axle

### DRIVER COMFORT

- Kenworth GT702 HB with Dura Supreme material with nice air ride suspension
- Kenworth GT702 HB with Dura Supreme material Passenger seat with Air Ride and Swivel for access to work station with desk
- Factory installed refrigerator and compartment and plug for apartment size microwave
- Plenty of standing and leg room
- 76" Raised roof with double bunk/ with workstation and TV mount
- Full bunk storage
- Kenworth Radio with AM/FM/ WB/ CD/USB/ Bluetooth and Sirus XM
- 42x80 Pocket Coiled Spring Mattress & 30x78 memory foam upper mattress
- 13.2K Dana steer axle
- Carrier Comfort Pro APU with Hotel Load

Estimated Compensation
Package Calculator

To calculate your estimated compensation package at JCT, adjust the green fields** and click UPDATE.

As of                                                                      February 2017

Current fuel
surcharge is                                                               $0.22 Per Mile

Current fuel
cost is                                                                     $2.52 Per Gallon

Please use these figures in the corresponding GREEN FIELDS below to calculate the most accurate estimate

**Compensation**

| | | | | |
|---|---|---|---|---|
| Mileage | | 2800 | $2,520.00 | |
| Misc. pay (stop off) | | | $40.00 | |
| Surcharge | | 0.22 | $616.00 | |
| Total Weekly Revenue | | | | **$3,176.00** |

**Fixed Expense**

| | | | | |
|---|---|---|---|---|
| Fixed Payment Amt. | | | | $120.00 |
| Vari Payment Amt. | | 0.23 | $644.00 | |
| Total Truck Payment | | | $764.00 | |
| Perf Escrow | | | $25.00 | |
| Qualcomm Rental | | | $11.53 | |
| Bob-tail insurance | | | $7.62 | |
| OccAcc (per driver) | | | $36.62 | |
| Physical Damage Insurance | | | | $116.90 |
| ATBS (optional) | | | $19.31 | |
| Total Fixed Expense | | | $980.98 | |

**Variable Expense**

| | | | | |
|---|---|---|---|---|
| Fuel  mpg/$ | 7.50 | 2.52 | $940.80 | |
| Maintenance | 0.05 | | $140.00 | |
| Total Variable Expense | | | **$1,080.80** | |
| | | | | |
| Total Expense | | | **$2,061.78** | |
| | | | | |
| Net Weekly Settlement | | | **$1,114.22** | |

This is an estimate of what your fixed expenses and variable expenses may be. Truck payments do vary according to tractor and year. Fuel surcharge subject to change weekly.

 (http://www.johnchristner.com)

Driver Opportunities (http://www.johnchristner.com/driver-opportunities/)

Current Drivers (http://www.johnchristner.com/current-drivers/)

Logistics (http://www.johnchristner.com/logistics/)

Current Customers (http://www.johnchristner.com/current-customers/)

JCT Media Center (http://johnchristnertrucking.com/media/)



Home (http://www.johnchristner.com) / Driver Opportunities (http://www.johnchristner.com/driver-opportunities/) / Lease to Own

# LEASE TO OWN

JCT's Lease to Own Program (through Three Diamond Leasing, LLC) has been a huge success. The program was designed to allow you the opportunity to begin building equity. Your experience is your credit and your hard work takes care of the rest. Through TDL, we offer a fleet of newer model, high-content trucks and we offer one of the best compensation packages in the industry.

- $.90 Cents Per Mile, All Dispatched Miles
- $.02 Cents Per Mile Safety Bonus, Paid Quarterly
- Paid Base Plates and Permits
- Road Use and Fuel Taxes Paid
- EZ Pass, Pike Pass and Pre-Pass
- Toll and Scale Reimbursement
- Nationwide Discount Fuel Network
- Fuel Surcharge Updated Weekly Based on DOE National Average
- Large Fleet Buying Power

The best part about our Lease program is that at the end of the lease term, the truck is yours for a buck! Get started now and make your dreams of owning your own truck and being your own boss a reality. Click on the application link to apply today

## MINIMUM QUALIFICATIONS

Please review the below qualifications that must be met in order to be considered:

- Class A CDL
- Must be at least 23 years of age
- Must have recent OTR, 48 state tractor-trailer driving experience
- No more than three (3) moving violations in the past three (3) years
- No more than three (3) preventable accidents/incidents in the past three (3) years
- No DUI/DWI in the past five (5) years

Please call our recruiting department directly at 877-528-4478 or click here to submit your application on-line.

Apply Online (https://ebeweb.johnchristner.com/RecruitingWebUpgrade/Pages/DriverWelcome.aspx)

First Name

Last Name

Email Address

Primary Phone

Your CDL #

CDL State

Who are you currently driving for?

How long with current carrier?

Submit

John Christner Trucking

 (https://www.facebook.com/johnchristnertrucking?fref=ts&ref=br_tf)   (https://twitter.com/drivejct?lang=en)

Toll Free: 800-324-1900
Local: 918-227-1600
Fax: 918-227-6685

19007 W. Hwy 33
Sapulpa, OK 74067-1900 (http://maps.google.com/?q=19007%20W.%20Hwy%2033%20Sapulpa,%20OK%2074067)

Driver Opportunities

About (http://www.johnchristner.com/driver-opportunities/about/)
Lease to Own (http://www.johnchristner.com/driver-opportunities/lease-to-own/)
Teams (http://www.johnchristner.com/driver-opportunities/teams/)
Owner Operators (http://www.johnchristner.com/driver-opportunities/owner-operators/)
Proforma (http://jctvariablelease.com/)
Equipment (http://www.johnchristner.com/driver-opportunities/equipment/)
Contact (http://www.johnchristner.com/driver-opportunities/contact/)

Current Drivers

About (http://www.johnchristner.com/current-drivers/about/)
Upcoming Events (http://www.johnchristner.com/current-drivers/upcoming-events/)
Ins, Contracts, Settlements (http://www.johnchristner.com/current-drivers/ins-contracts-settlements/)
Company Store (http://www.johnchristner.com/current-drivers/company-store/)
Diamond Rewards (http://www.johnchristner.com/current-drivers/diamond-rewards/)
Contact (http://www.johnchristner.com/current-drivers/contact/)

Logistics

About (http://www.johnchristner.com/logistics/about/)
JCT Logistics (http://www.johnchristner.com/logistics/jct-logistics/)
Contact (http://www.johnchristner.com/logistics/contact/)

Current Customer

About (http://www.johnchristner.com/current-customers/about/)
Services, Equipment (http://www.johnchristner.com/current-customers/services-equipment/)
Tracking (http://www.johnchristner.com/current-customers/bol/)
Contact (http://www.johnchristner.com/current-customers/contact/)

 (http://www.johnchristner.com)

≡

Driver Opportunities (http://www.johnchristner.com/driver-opportunities/)

Current Drivers (http://www.johnchristner.com/current-drivers/)

Logistics (http://www.johnchristner.com/logistics/)

Current Customers (http://www.johnchristner.com/current-customers/)

JCT Media Center (http://johnchristnertrucking.com/media/)

Home (http://www.johnchristner.com) / Driver Opportunities

## DRIVER OPPORTUNITIES

Commitment to service is one of the many reasons JCT is recognized among the best in the transportation of temperature controlled goods. This commitment starts with our partnership with the best Lease Operators. JCT offers a driving career that is rewarding not only from an earnings perspective, but also because you will have the experience of being part of a team recognized as one of the best in the industry.

JCT offers a few different programs: Lease Purchase (through Three Diamond Leasing, LLC), Owner Operator, and Teams. Whichever path you choose, you have the opportunity to succeed in being our own boss and owning your own truck.

Take a few minutes to complete our online application, or call one of our helpful recruiters right now at 877-528-4478.

### JCT DRIVER BENEFITS

- Higher Pay Rate
- Truck Maintenance
- Lease-to-Own Program ($1 Buyout)
- Relaxed Atmosphere
- Better Equipment

Apply Online (https://ebeweb.johnchristner.com/RecruitingWebUpgrade/Pages/DriverWelcome.aspx)

First Name



## DRIVERS

Lease to Own

Teams

Owner Operators

Hiring Area

Equipment

   2014 Freightliner Evolution

   2013 Kenworth T660

   12 Freightliner Cascadia

Why JCT?

Orientation Information

### DRIVERS - GO THE DISTANCE WITH JCT

One of the many reasons John Christner Trucking is a recognized leader in the trucking industry is because of our commitment to service. That commitment starts with our industry-leading lease operators. At John Christner, our standards are high, but if you are willing to put in the effort, you will have a career that is rewarding not only from an earnings perspective, but also because you will have the experience of being part of a team that is recognized nationwide for being the best.

Are you ready to own your own truck? Our Lease-to-Own program allows you to drive your way to ownership. Though this program does take a lot of hard work and at times may not be easy, you will find that, in the end, the results are truly rewarding. Your experience is your down payment; your safe driving record and quality work record are your credit. Just a few years of hard work and you'll be able to say you own your own truck, trade into a newer model or even walk into the truck dealership of your choice with trade equity to buy that dream truck you've always wanted!

Think you've got what it takes? While not everyone qualifies, if you do qualify and you are willing to put in the effort, you will be well on your way to being in business for yourself. Take a few minutes to complete our online application or call one of our helpful recruiters right now.

*Please call our recruiting department directly at 877-528-4478.*

### JCT DRIVER BENEFITS

- Higher pay rate
- Truck maintenance
- Lease-to-Own Program
- Relaxed atmosphere
- Better equipment

**DRIVERS**
Click Here to Apply

**EMPLOYMENT VERIFICATION**
SITE MAP

CALL TODAY 800.324.1900
Copyright ¡¿½2012 John Christner Trucking, LLC. All Rights Reserved.

## LEASE-TO-OWN PROGRAM

If you have always dreamed of owning your own truck and getting the chance to enjoy the independence of being your own boss, our Lease to Own program is the key to making those dreams come true!

Our program is designed to allow you to begin building equity (ownership) simply by driving the truck! Your experience is your credit and your hard work takes care of the rest. We operate a fleet of newer model high-content trucks and we offer one of the best compensation packages in the industry:

- .90 cents per mile, all dispatched miles
- .02 cents per mile safety bonus, paid quarterly
- Paid base plates and permits
- Road use and fuel taxes paid
- EZ Pass, Pike Pass and Pre-Pass
- Toll and scale reimbursement
- Nationwide discount fuel network
- Fuel Surcharge updated weekly based on DOE national average
- Large fleet buying power

Most importantly, at the end of the lease term, the truck is yours for $1...that's right, just $1 and the title is yours!! Get started now on making your dreams of owning your own truck and being your own boss a reality with JCT's Lease-to-Own Program! Click on the application link to apply today!

## MINIMUM STANDARDS

You must meet the criteria below in order to be considered:

- Must be at least 23 years of age and have recent over the road, 48 state tractor-trailer driving experience, and possess a valid Class A CDL.
- No more than three (3) moving violations in the past three (3) years.
- No more than three (3) preventable accidents/incidents in the past three (3) years.
- No DUI/DWI in the past five (5) years.
- No felony convictions in the past seven (7) years.

***Please call our recruiting department directly at 877-528-4478*** or click on the "driver application form" link to submit your application on-line.

**DRIVERS**
Click Here to Apply

SmartWay Transport Partner

CALL TODAY 800.324.1900
Copyright ï¿½2012 John Christner Trucking, LLC. All Rights Reserved.



**CALL TODAY 800.324.1900** | DRIVING OPPORTUNITIES | CURRENT CUSTOMERS | CURRENT JCT DRIVERS

ABOUT JCT    TRUCKLOAD SERVICES    LOGISTICS    CONTACT JCT    TRUCKS FOR SALE

**DRIVERS**

Lease to Own

Teams

Owner Operators

Hiring Area

Equipment

    2014 Freightliner Evolution

    2013 Kenworth T660

    12 Freightliner Cascadia

Why JCT?

Orientation Information

## TEAMS

Lease Purchase and Owner Operator Team Programs do not get any better than the program at John Christner Trucking! It's no secret that teams earn more money, so why not earn more money while driving for a company that has a well-known reputation for being a leader in the industry.

We have recently been awarded **TEAM SPECIFIC FREIGHT** and we are looking for the best teams to help us meet the demand.

**NOW OFFERING:**

- **$.97** cpm for **TEAMS ONLY** (Includes a $.02 cpm Safety Bonus Paid Quarterly)
- **TEAM ONLY Priority Dispatch**

**PROGRAM INCLUDES:**

- Mostly Drop and Hook
- Lots of Straight Loads
- Great Miles
- No Cash Down
- $1 Buyout With No Balloon Payments
- Fuel Surcharge Paid on All Miles
- Weekly Settlements
- Direct Deposit
- Paid Permits and Base Plates
- Road Use and Fuel Taxes Paid (O/O's responsible for 2290)
- Toll and Scale Reimbursement
- True Lease Purchase Program That Saves Drivers $10 - $12K of Out - of - Pocket Expenses

The Lease Purchase Program at JCT is GREAT for teams! Our solo drivers are more successful and driving with a partner can make your goals even more attainable since you can run MORE MILES while keeping the same truck payment. The program has many perks and there are no variable mileage charges or hidden fees.

You run, you get paid, your partner is on the truck and with each payment, ownership is closer to being yours. Find out for yourself why our Operators are successful and are smiling when you see them on the road

**TEAM UP WITH A LEADER IN THE INDUSTRY FOR TEAM DRIVERS AND START EARNING MORE MONEY TODAY!**

*Please call our recruiting department directly at 877-528-4478.*

**DRIVERS**
Click Here to Apply

**EMPLOYMENT VERIFICATION**
SITE MAP

SmartWay
Transport Partner

CALL TODAY 800.324.1900
Copyright ¡¿2012 John Christner Trucking, LLC. All Rights Reserved.

EXHIBIT B

Here's the job you were looking for. Click it to see more details.

## Owner Operators Earn $0.95 per mile, $0.02 Bonus!

Phoenix, AZ  |  John Christner Trucking

Job Description: OWNER OPERATOR TRUCK DRIVER OPPORTUNITIES $.95 per All Dispatched Miles $.02 Safety Bonus $3,500 Sign-On Bonus for Teams! APPLY ONLINE TODAY! Make your dreams of owning your own truck and being your own boss a reality. To learn more call us! 877-528-4468 If you are looking for the chance to BECOME an Owner Operator , John Christner Trucking also has one of the Nation s BEST Lease Purchase Programs! Our program is designed to allow you to begin building equity (ownership) simply by driving the truck! Your experience is your credit and your hard work takes care of the rest. Call for details! OWNER OPERATOR PAY: * $.95 per Mile, All Dispatched Miles * $.02 per Mile Safety Bonus, Paid Quarterly * No Load Boards * Consistent Freight * 1,200 Average Length of Haul * Insurance is Available Through Us if You re Looking for a New Provider * The ONLY Thing O/O s are Responsible for is the 2290 (Road Taxes) PLUS: * Fuel Surcharge Loaded and Empty Miles * Fuel Tax * Base Plates * Permits * Lumpers * Tolls * Reefer Fuel * Scales * Prepass * Oklahoma Pike Pass * Easy Pass * TripPak Express Team up with a leader in the industry and Start Earning More Money Today! REQUIREMENTS: * Class-A CDL with at Least 3 Months OTR Experience * Good MVR and Good Safety History APPLY ONLINE BELOW or CALL NOW 877-528-4468

Posted this month